# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | |
| Plaintiff, | CIVIL ACTION NO. 3:16-cv-01880 |
| v. | (JUDGE CAPUTO) |
| MICHELINA ENTERPRISES, INC, et al., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Plaintiff's Motion for Default Judgment. (Doc. 10.) For the reasons that follow, the Motion will be granted in part and denied in part.

### I. Relevant Background

On September 15, 2016, Plaintiff Joe Hand Promotions, Inc. filed its Complaint against Defendants Brian Urbanas and Eric Bartoletti, as officers, directors, shareholders, members, and/or principals of Michelina Enterprises, Inc. d/b/a Bart & Urby's, and Defendant Michelina Enterprises, Inc. d/b/a Bart & Urby's. (Doc. 1.) Plaintiff raises claims stemming from Defendants' alleged unauthorized and illegal receipt and exhibition of the "UFC 196: McGregor v. Diaz" match (the "Fight"), broadcast on March 5, 2016 at Bart & Urby's. The lawsuit charges Defendants with, *inter alia*, a willful violation of 47 U.S.C. § 605. Defendants were served with the Summons and Complaint on October 4, 2016. (Docs. 5, 6, 7.) To date, Defendants have failed to appear or otherwise file a pleading responsive to Plaintiff's Complaint within the time prescribed by the Federal Rules of Civil Procedure. Upon the failure of Defendants to timely file a responsive pleading, Plaintiff moved for an entry of default against Defendants on November 22, 2016. (Doc. 8.) The Clerk entered default against Defendants on April 20, 2017. (Doc. 9.) Plaintiff filed the instant Motion for Default Judgment on July 19, 2017 (Doc. 10), and a hearing was held on August 17, 2017. In its Motion, Plaintiff seeks statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants in the

amount of $5000.00, enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendants in the amount of $20,000.00, costs totaling $460.00, and attorneys' fees.[1]

Plaintiff is a distributor of sports and entertainment programming to commercial establishments. Plaintiff entered into an agreement with the promoter of the Fight, which provided Plaintiff with the exclusive right to license the exhibition of the Fight to commercial establishments. For a fee, commercial establishments can purchase the right to exhibit certain programming from Plaintiff, including the Fight. This fee is determined by the occupancy of the establishment. Defendants are the owners and operators of Bart & Urby's, a bar and restaurant located in Wilkes-Barre, Pennsylvania. According to Plaintiff, the interstate satellite transmission of the Fight was coded or scrambled and was not intended for use by the general public. If a commercial establishment was authorized by Plaintiff to receive the Fight, it was provided with the decoding equipment necessary to receive the signal. In an effort to combat the illegal interception of these signals, Plaintiff engages outside auditors to identify and visit establishments that are exhibiting programming without authorization.

In that regard, on the night of the Fight, Craig Moran, one of Plaintiff's auditors, arrived at Bart & Urby's around 10:32 PM and observed a UFC 196 pay-per-view exhibition broadcasted on one (1) television. According to his Affidavit, Moran witnessed the UFC 196 pay-per-view fight between Tom Lawler and Corey Anderson.[2] Moran attested that approximately forty-three (43) patrons were present in the bar at some point between 10:32 PM and 12:17 AM, but that only twenty-six (26) patrons were in the bar when Moran first arrived. Moran further attested that Bart & Urby's has an approximate capacity of 140 people. (Ex. 6, Doc. 11-6.) Thus, Defendants' fee for the Fight would have been $1,313.00, according to the Rate Card attached to Plaintiff's

---

[1] Plaintiff is permitted to submit a Fee Application, as noted at the hearing.

[2] The Moran Affidavit makes no mention of the *McGregor v. Diaz* match alleged in the Complaint. (Ex. 6, Doc. 11-6.)

Motion. (Ex. 4, Doc. 11-4.)

## II. Legal Standard

Federal Rule of Civil Procedure 55(b)(2) allows the Court, upon a plaintiff's motion, to enter default judgment against a party that has failed to plead or otherwise defend a claim for affirmative relief. There is a well-established preference in the Third Circuit that cases be decided on the merits rather than by default whenever practicable. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180-81 (3d Cir. 1984). Thus, district courts routinely address a number of issues before deciding whether a default judgment is warranted. *Joe Hand Promotions, Inc. v. Waldron*, 2013 WL 1007398, at \*1-\*4 (D.N.J. Mar. 13, 2013). In order to grant Plaintiff's Motion, the Court must assess: (1) whether it has jurisdiction over the defaulting party; (2) whether the entry of default under Rule 55(a) was proper; (3) the fitness of the defaulting parties to be subject to default judgment; (4) the sufficiency of Plaintiff's Complaint; and (5) the *Emcasco* factors. *See id.*

To state a claim under 47 U.S.C. § 605,[3] a plaintiff must establish that defendants "(1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others." *J & J Sports Prods., Inc. v. Edrington*, 2012 WL 525970, at \*2 (D.N.J. Feb. 16, 2012) (citations omitted). Under the statute, a private party "aggrieved" by the unauthorized reception of communications may elect to receive either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages range from $1,000 to $10,000 per violation. *Id.* § 605(e)(3)(C)(i)(II). The Court is to choose an amount within this range that it "considers just" under the circumstances. *Id.* In addition, if the unauthorized reception of the communications was done "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," the Court has discretion to award "enhanced damages" in an amount of not more than

---

[3] Because Defendants failed to respond, the Court finds it appropriate to permit Plaintiff to elect to recover damages under § 605. *See Waldron*, 2013 WL 1007398, at \*1 n.2.

3

$100,000 per violation. *Id.* § 605(e)(3)(C)(ii). Under the statute, costs and attorney's fees must be awarded to the Plaintiff. *Id.* § 605(e)(3)(B)(iii).

### III. Discussion

#### A. Plaintiff is Entitled to a Default Judgment

As an initial matter, the Court finds that Plaintiff is entitled to a default judgment. First, the Complaint makes clear that the Court has subject-matter jurisdiction over this action, and the Court exercises personal jurisdiction over Defendants as they were physically located in Pennsylvania at the time they were served. Second, the Clerk's entry of default was proper, considering that Defendants were properly served and failed to respond to the Complaint within the time prescribed by the Federal Rules. Third, the Court accepts the averments of Plaintiff's counsel that the defaulting parties are properly subject to a default judgment. (Janis Decl. ¶ 4, Ex. 1, Doc. 11-1.) Fourth, the Court finds that the well-pleaded allegations in Plaintiff's Complaint state a viable cause of action against Defendants under § 605. Plaintiff alleges that it was granted the exclusive right to license and distribute the Fight, that Defendants did not pay or otherwise receive authorization from Plaintiff to exhibit the Fight, and that Defendants nevertheless intercepted the communication and exhibited the Fight to its patrons on March 5, 2016 without authorization. (Compl. ¶¶ 1, 9, 11-14.)

Lastly, the Court considers the *Emcasco* factors, which are: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Waldron*, 2013 WL 1007398, at *4 (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). As Defendants have failed to respond, there is no indication that they have a meritorious defense, and their silence suggests culpability on their part. Moreover, Plaintiff would be prejudiced if it did not receive a default judgment, as it would have no alternative means to vindicate its claim against Defendants. Thus, the Court finds that the these factors weigh in favor of a default judgment, and that Plaintiff is entitled to a default judgment in this case.

#### B. Statutory Damages Under Section 605(e)(3)(C)(i)(II)

Plaintiff seeks $5000.00 in statutory damages under § 605(e)(3)(C)(i)(II). Plaintiff

argues that it would be "impossible to determine the full extent of profits lost by Plaintiff, loss of goodwill and the additional damages sustained by Plaintiff as a result of Defendants' unlawful actions." (Mot. 7, Doc. 11.) Plaintiff also contends that they should be awarded "additional compensation to account for any profits gained by [Defendants] from the increased proceeds coming from the sale of drinks and/or meals sold to patrons as an indirect result of their unlawful actions." (*Id.*) Furthermore, Plaintiff seeks a damages award under this Section that "achieves the deterrent purposes of the statute." (*Id.*)

First, the Court notes that according to Plaintiff's Rate Card, the fee it lost by virtue of Defendants' unlawful actions was for $1,313.00, based on the approximate occupancy of Bart & Urby's. (Ex. 4, Doc. 11-4.) Clearly, Plaintiff should receive an award that compensates it for this lost fee. However, the Court disagrees with Plaintiff's contention that statutory damages under this Section should factor in deterrence. Considering that a party may be subject to statutory damages under § 605 without engaging in intentional or willful misconduct, the Court cannot conclude that Congress intended statutory damages awards under this Section to deter an unwitting violator. *See J&J Sports Prods., Inc. v. Cruz*, 2015 WL 2376051, at *4 (E.D. Pa. May 18, 2015) . Indeed, many courts in this Circuit have found that statutory damages under § 605 should approximate actual damages and not consider deterrence. *See Joe Hand Promotions, Inc. v. Batra*, 2017 WL 838798, at *3 (D.N.J. Mar. 2, 2017) (citing cases); *J&J Sports Prods., Inc. v. Chauca*, 2015 WL 7568389, at *6-*7 (E.D. Pa. Nov. 25, 2015) (citing *Cruz*, 2015 WL 2376051, at *4). Thus, Plaintiff is entitled to $1,313.00 in statutory damages for the licensing fee that it did not receive from Defendants, but the Court declines to increase this award based on a deterrence rationale.

In addition to the fee, the Court finds it appropriate to attempt to estimate the profits Defendants earned that are "attributable to the violation" alleged in the Complaint. *Chauca*, 2015 WL 7568389, at *7 (citing *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 280 (E.D. Pa. 2014)). However, "in the absence of evidence, an estimate of profits should be a conservative figure," and the Court must use its discretion to ensure that this estimation is attributable to the violation. *Yakubets*, 3 F. Supp. 3d at 280. Here, the Court

5

will award an additional $687.00 in damages. This figure is based on the average number of people observed in the bar by the auditor on March 5, 2016 (26 + 34 + 43/3) and an estimated profit of $20 per patron. *See Cruz*, 2015 WL 2376051, at *5-*6.

Thus, the Court will award $2,000.00 in statutory damages under § 605(e)(3)(C)(i)(II).

### C. Enhanced Statutory Damages Under Section 605(e)(3)(C)(ii)

Plaintiff seeks $20,000.00 in enhanced statutory damages under § 605(e)(3)(C)(ii). Plaintiff argues that Defendants' illegal conduct was both willful and committed for direct or indirect commercial advantage or private financial gain. (Mot. 8-9.) Plaintiff relies heavily on screenshots attached to its Motion, which display advertisements for the Fight on Bart & Urby's Facebook and Instagram pages. (Ex. 2, Doc. 11-2.) These social media advertisements also promoted various drink specials taking place during the Fight.

Enhanced damages are available, in the Court's discretion, if Defendants have willfully pirated the program for the purpose of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). The Court accepts Plaintiff's contention that there appears to be no plausible way for Defendants to have "mistakenly, innocently, or accidentally" accessed the broadcast of the Fight (*see* Hand Aff. ¶ 9, Ex. 3, Doc. 11-3), and therefore the interception necessarily required some affirmative step. *See Waldron*, 2013 WL 1007398, at *3; *Kingvision Pay-Per-View, Ltd. v. Lardo*, 2010 WL 3463316, at *4 (W.D. Pa. Sept. 1, 2010) ("It is also unlikely that [defendants] accidently intercepted the encrypted program."). This assertion is corroborated by the fact that Defendants actively advertised the Fight on their social media pages, confirming that they intended to broadcast the event at Bart & Urby's on March 5, 2016. Additionally, the Court finds that Defendants acted for the purpose of direct or indirect commercial advantage or private financial gain. Again, Defendants advertised the broadcast of the Fight on their social media pages, promoted drink specials at their bar in conjunction with the exhibition, and encouraged people to patronize their bar by charging no cover to view this pay-per-view event. *See Chauca*, 2015 WL 7568389, at *9; *Waldron*, 2013 1007398, at *3. Accordingly, enhanced damages are warranted in this case.

There appears to be two predominant methods for calculating enhanced damages in this Circuit. One method involves weighing a list of non-exhaustive factors to assess the amount of enhanced damages warranted in a particular case. *See Waldron*, 2013 WL 1007398, at *7; *see also Batra*, 2017 WL 838798, at *4; *Joe Hand Promotions, Inc. v. Becchetti*, 2013 WL 4520638, at *5 (M.D. Pa. Aug. 26, 2013). Other courts arrive at an enhanced damages figure by simply applying a multiplier to its award of statutory damages. *See Chauca*, 2015 WL 7568389, at *9 (multiplier of three); *Cruz*, 2015 WL 2376051, at *7 (same).

The Court finds it more appropriate to apply and weigh the relevant factors identified by courts to assess the appropriateness of an enhanced damages award, rather than a flat multiplier. Courts have considered the following factors in arriving at an enhanced damages award: "(1) whether the defendant has intercepted unauthorized broadcasts repeatedly and over an extended period of time; (2) whether it reaped substantial profits from the unauthorized exhibition in question; (3) whether the plaintiff suffered significant actual damages; (4) whether the defendant advertised its intent to broadcast the event; and (5) whether the defendant levied a cover charge or significant premiums on its food and drink because of the broadcast." *Waldron*, 2013 WL 1007398, at *7 (citation omitted).

Here, there is no direct evidence that Defendants are repeat offenders. This weighs against imposing a hefty enhanced damages award. However, at the hearing, Plaintiff's counsel directed the Court to comments posted on Bart & Urby's Facebook page. (*See* Ex. 2, Doc. 11-2.) One comment made from Bart & Urby's own Facebook account in connection with its promotion of the Fight states: "Next UFC pay per view will also be free on 4.23[.][C]an't wait." (*Id.* at 2.) This suggests that Defendants, at the least, might have considered committing a repeat violation, which weighs in favor of an increased enhanced damages award. As to any "substantial profits" reaped, there is no evidence that Defendants charged a cover on the night of the Fight or imposed premiums on its food or drinks. (*See* Moran Aff. 1, Doc. 11-6.) Based on the materials submitted by Plaintiff, it is difficult for the Court to assess whether Defendants made any profits, let alone substantial profits, that are

specifically attributable to the violation alleged rather than the establishment's normal Saturday night business. Additionally, the Court considers the fact that the auditor observed five televisions in Bart & Urby's, only one of which was displaying a UFC 196 fight, and that the maximum estimated attendance was forty-three (43) patrons in an establishment with an estimated occupancy capacity of 140 people. These factors suggest that the violation was relatively small in scale, and thus warrants a lesser enhanced damages award. However, the Court recognizes that Defendants clearly advertised the Fight in connection with promoting sales of their drinks and encouraged people to patronize their bar. This weighs in favor of a steeper enhanced damages award.

Considering the above, the Court will award Plaintiff $2500.00 in enhanced damages. The Court believes this figure takes into account the fact that Defendants' advertised the Fight in connection with drink promotions on their social media pages, the fact that Defendants are not shown to have been repeat violators, the lack of proof as to any substantial profits Defendants reaped that are attributable to the illegal broadcasting of the Fight, the fact that only one television was displaying the Fight, and the fact that the auditor counted between twenty-six and forty-three patrons in the bar over the course of the night.

### D. Individual Liability

Lastly, Plaintiff requests the Court to impose vicarious liability upon the individual Defendants Brian Urbanas and Eric Bartoletti. Courts sitting in this Circuit have imposed individual liability for a § 605 violation if the individual defendant (1) has the right and ability to supervise the violative activity, although he need not actually be supervising, and (2) has a direct financial interest in the violation, i.e. financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity. *Chauca*, 2015 WL 7568389, at *5 (citing *J&J Sports Prods., Inc. v. Cruz*, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015) (quoting *Yakubets*, 3 F. Supp. 3d at 296)); *see DIRECTV, Inc. v. Cibulka*, 2011 WL 3273058, at *1 n.2 (M.D. Pa. July 29, 2011). However, "conclusory allegations of a right and ability to supervise the violative activity and direct financial interest are not enough . . . the proponent of default judgment must offer facts to support the plausibility of those conclusory

8

allegations." *J&J Sports Prods., Inc. v. Giraldo*, 2015 WL 7014649, at *3 (E.D. Pa. Nov. 12, 2015) (citing *Yakubets*, 3 F. Supp. 3d at 299-300). Indeed, even on a motion for default judgment, the Court should accept only "well-pleaded" allegations as true and disregard "mere legal conclusions." *Waldron*, 2013 WL 1007398, at *3 (citations omitted).

Here, Plaintiff has produced nothing more than conclusory allegations "parroting the test for vicarious liability," and has supplied the Court with no evidence to support its claims that the individual Defendants had a right or ability to control the violative conduct or possessed a direct financial interest in the violative activity. *Giraldo*, 2015 WL 7014649, at *3. In order to impose vicarious liability upon the individual Defendants, Plaintiff is required to put forth more than boilerplate recitations made "upon information and belief." *See id.*; *cf. Yakubets*, 3 F. Supp. 3d at 299-301. Thus, the Court will not hold Defendants Brian Urbanas and Eric Bartoletti individually liable for Defendant Michelina Enterprises, Inc.'s statutory violation.

## IV. Conclusion

For the above stated reasons, Plaintiffs' Motion for Default Judgment (Doc. 10) will be granted in part and denied in part.

An appropriate order follows.

August 18, 2017　　　　　　　　　　　　　　/s/ A. Richard Caputo  
Date　　　　　　　　　　　　　　　　　　　A. Richard Caputo  
　　　　　　　　　　　　　　　　　　　　　United States District Judge